## Leon Unger and Nina Unger, Appellees, v. Parmelee Company, Appellant.

### Gen. No. 27,040.

CARRIERS—*nonliability of transfer company for loss of articles from trunk after control reassumed by owner.* Where a transfer company was engaged to carry two trunks to a certain apartment and was not informed that the apartment was not to be occupied by plaintiffs for some time and one of the trunks, because of its weight, was placed in the basement, where one of the plaintiffs found it two days later, at which time the lock was intact, and he directed the janitor to take it to the apartment, which was not done until three days later, and articles were, in the meantime, stolen therefrom, plaintiffs, by leaving the trunk in the basement after discovering it there and in directing the janitor as to its disposal, resumed possession thereof, and the transfer company could not be held liable for loss of the articles notwithstanding it failed to make a proper delivery of the trunk.

Appeal from the County Court of Cook county; the Hon. F. S. RIGHEIMER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed. Opinion filed June 28, 1922.

SAMUEL G. HAMBLEN, for appellant.

H. J. ROSENBERG and RUDOLPH FRANKENSTEIN, for appellees; RUDOLPH FRANKENSTEIN, of counsel.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

The plaintiffs brought this action against the defendant to recover the value of certain goods which were contained in one of their trunks, which they had engaged the defendant to carry from one of the depots in Chicago to their apartment, and which were alleged to have been lost to the plaintiffs by reason of the negligence of the defendant. The jury found the issues for the plaintiffs and assessed their damages at the sum of $500. Judgment for that amount was duly

entered, to reverse which, the defendant has perfected this appeal.

Several grounds are urged by the defendant in support of its appeal, but, in the view we take of the case, it will be necessary to consider but one of them.

The plaintiffs were married late in May and they arrived in Chicago on June 12, 1919. They had two trunks, a wardrobe trunk and another which is described as a sample trunk, in which were a quantity of linen luncheon cloths, center pieces, and various table, bed and other linen. Their trunk checks were delivered to the defendant, Parmelee Company, which company was engaged to transfer the trunks from the railway depot to the third apartment at a given address in the City of Chicago. The plaintiff, Leon Unger, testified that he had examined the trunks after they had been taken from the train in Chicago and that they were in good condition and the locks were intact.

It seems that the plaintiffs had leased the apartment in question, but did not intend to occupy it immediately—at least not upon their arrival in Chicago. Leon Unger testified that after engaging the defendant to carry the trunks from the depot to the apartment, he went to the apartment but only stayed a few moments as it was empty; that he delivered his Parmelee checks, together with the key to his apartment, to the janitor of the building and told him to have the trunks put in the apartment when they were delivered. The next time Leon Unger visited the apartment was on June 14, two days later, and at that time he found the wardrobe trunk in his apartment on the third floor and the other trunk in the basement. At this time he again examined the lock on the latter trunk and it seemed to be all right.

When he visited his apartment on the 14th, and found this trunk in the basement, he directed the janitor to take it upstairs to his apartment. The

trunk was very heavy and the janitor could not move it alone and it was not until June 17, that he secured the help of his brother and carried the trunk upstairs. In the meantime the trunk remained where the plaintiff, Leon Unger, had found it on June 14, in the basement. When the janitor and his brother carried the trunk upstairs on June 17, it was in the early evening. The janitor testified that it was beginning to get dark. They carried the trunk right side up with their hands under the bottom corners, and upon reaching the third floor outside of the plaintiffs' apartment they put the trunk down on the floor and as they set it down, the janitor testified, the lock flew open, this being the first time he had noticed there was anything wrong with it. The janitor then left the trunk on the back porch, went to one of the apartments in the building, occupied by the owner, and there telephoned to the place where the plaintiffs were staying and told Leon Unger what had happened. The plaintiff got over to his apartment about 9 or 10 o'clock and found the trunk on the back porch where the janitor had left it. He then put the trunk in his apartment and it was discovered that the goods in question had been abstracted from it.

Leon Unger testified that when he engaged the defendant to take his trunks from the depot and deliver them at his apartment, he did not tell the defendant's agent that he expected to establish a home at the address he gave but that as yet he had not moved in. The evidence shows that when the wagon men of the defendant arrived at the plaintiffs' address, they carried the wardrobe trunk upstairs and put it in the apartment in question. They then stated that the other trunk was too heavy and they could not carry it up. They put the trunk down in the yard. The owner of the building observed this and objected and said that the trunk would at least have to be put in the basement, which was then done. The place in the

basement where the trunk was left and where the plaintiff, Leon Unger, found it on June 14, was a large common room, used in part as a laundry, which, Leon Unger testified, was free for ingress and egress to all persons in the building. This witness further testified that the doors were not locked except in the evening; that they were not locked when he was there on June 14, and anyone could walk into the room. The janitor testified that the different tenants carried on their laundry work every day in this room, so he could not lock the door except at night; that this room was open during the day and anyone could get in without unlocking the door. The owner of the building testified that the janitor had orders to keep the basement door locked during the day, "because it was close to the alley." He admitted that he had heard the janitor say that so many people used the basement he could not keep it locked, but he said the janitor had orders to lock it as soon as the women were through using it for laundry purposes, for the reason stated above.

On the foregoing evidence, we are of the opinion that the judgment must be reversed. It is apparent from the plaintiffs' own testimony that the loss of these goods occurred after the trunk had left the possession of the defendant and while it was in the basement of the building in which the plaintiffs had leased their apartment. The plaintiffs turned the trunks over to the defendant to be carried to this building, without making the fact known that they were then not living there, but merely had leased an apartment which was still unfurnished. The defendant, having undertaken to deliver these trunks at the third apartment in the building in question, was under obligation to do so, as the plaintiffs contend, and that they did not make a proper delivery of this trunk, when they left it in a general room in the basement of a building, is, of course, clear. But, when Leon Unger

found the trunk in the general, unlocked, basement room, open to the use of all the tenants of the building, on June 14, and chose at that time, as he did, to resume possession of the trunk and give the janitor directions as to its disposition, the plaintiffs could not be permitted to hold the defendant liable for a loss occurring thereafter. By the instructions given to the janitor by Leon Unger on June 14, the janitor was made the agent of the plaintiffs. It would seem clear that to leave this trunk, containing between $500 and $1,000 worth of property in an unlocked, general basement room, of a building containing a number of apartments, for several days, was not such care as an ordinarily prudent person would give such property.

For the reasons stated, the judgment of the county court is reversed.

*Judgment reversed.*

TAYLOR, J., concurs.

O'CONNOR, J., specially concurring: I agree that the judgment must be reversed for the reasons stated in the foregoing opinion. And, in my opinion, no recovery could be had because the trunk did not contain "baggage." *Nathan v. Woolverton,* 69 N. Y. Misc. 425, 127 N. Y. Supp. 442; and my dissenting opinion in the case of *Stanfield v. Frank Parmelee Co.,* 223 Ill. App. 199, and other authorities there cited.